IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ODDRY ARNOLDO CABRERA TORREALBA,<br>a/k/a, LUIS ALEJANDRO BERDUGO BARRAZA,<br><br>Defendant. | 4:24CR3095<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Lesley A. Woods, United States Attorney, Dan Packard, Assistant United States Attorney, and Frank Lin, Senior Counsel, and Defendant, Oddry Arnoldo Cabrera Torrealba, also known as Luis Alejandro Berdugo Barraza, and Keith Dornan, and Marissel Descalzo, counsel for Defendant, as follows:

## I

## THE PLEA

A.    CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to waive Indictment and plead guilty to an Information alleging two counts. Count I of the Information charges a violation of Title 18, United States Code, Section 371, Conspiracy to Commit Bank Burglary and Computer Fraud.  Count II of the Information charges a violation of Title 18, United States Code, Sections 1030(a)(5)(A), (c)(4)(B), and 2, Intentional Damage to a Protected Computer.

B.    DISMISSAL OF COUNTS.

In exchange for Defendant's plea of guilty as indicated above, the United States agrees as follows: The United States will move to dismiss, as to Defendant, the Indictment at the time of sentencing. The United States also agrees that the defendant will not be federally prosecuted in the District of Nebraska for additional bank theft, bank fraud, and computer intrusion crimes as disclosed by the discovery material delivered to the defendant's attorney as of the date this agreement is signed by all parties, other than as set forth in paragraph A, above.  This agreement not to prosecute the defendant for specific crimes does not prevent any other prosecuting

1

authority from prosecuting the defendant for any other crime, or for any crime involving physical injury or death.

## II
## NATURE OF THE OFFENSES

A.    ELEMENTS EXPLAINED.

Defendant understands that the offense to which Defendant is pleading guilty has the following elements:

COUNT I:

1.    Two or more people reached an agreement to commit the crimes of bank burglary, computer fraud, and intentional damage to a protected computer;

2.    Defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;

3.    At the time Defendant joined in the agreement, Defendant knew the purpose of the agreement; and

4.    While the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

COUNT II:

1.    Defendant knowingly caused or attempted to cause the transmission of a program, code, or command to a protected computer;

2.    Defendant, as a result of such conduct, intentionally caused or attempted to cause damage to a protected computer without authorization; and

3.    As a result of such conduct, or if the offense would have been completed, Defendant caused loss to one or more persons during any 1-year period aggregating at least $5,000 in value.

B.    ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1.    Defendant conspired with others to steal money from Automatic Teller Machines ("ATMs") through the use of malware, a scheme known as ATM jackpotting. In this

2

scheme, Defendant and his coconspirators installed and deployed a variant of malware known as Ploutus onto ATMs. Once installed, Defendant and others used the Ploutus malware to force those ATMs to dispense cash without authorization. Defendant and his coconspirators conducted ATM jackpotting incidents in the District of Nebraska and elsewhere. The loss caused by deploying Ploutus exceeded $5,000.

2. In the course of conducting ATM jackpotting incidents, it was common for Defendant and his coconspirators to travel in crews and in multiple vehicles. It was also typical for members of the conspiracy to have different roles, including scouts to conduct reconnaissance, lookouts for law enforcement, individuals who physically opened ATMs and removed hard drives, and individuals to install the Ploutus malware, among other roles.

3. During the course of the offense, Defendant and his coconspirators communicated with one another via text communications on encrypted messaging applications, phone calls, and video calls.

4. Defendant committed ATM jackpotting incidents, alongside other coconspirators, using the Ploutus malware at the following banks, which were insured by the Federal Deposit Insurance Corporation or the National Credit Union Administration Board. As a result of the ATM jackpotting incidents, Defendant and his coconspirators obtained or attempted to obtain cash contained within ATMs at least in the amounts identified below:

| Dates | Victims | Loss |
|---|---|---|
| June 26-27, 2024 | Western Vista Federal Credit Union, Cheyenne Regional Medical Center, 214 E. 23rd Street, Cheyenne, Wyoming | $12,000 |
| July 5-8, 2024 | Heartland Credit Union, Hutchinson Community College, 1300 N. Plum Street, Hutchinson, Kansas | $25,000 |
| July 5-8, 2024 | Heartland Credit Union, Hutchinson Regional Medical Center, 1701 E. 23rd Avenue, Hutchinson, Kansas | $25,000 |
| July 19-24, 2024 | Washington State Employees Credit Union, University of Washington Medical Center, 1959 N.E. Pacific Street, Seattle, Washington | $239,800 |

| | | |
|---|---|---|
| July 19-24, 2024 | Washington State Employees Credit Union, University of Washington Husky Union Building, 4001 E. Stevens Way N.E., Seattle, Washington | $159,435 |
| July 18-26, 2024 | Washington State Employees Credit Union, Evergreen State College, 2741 N.W. McCaan Plaza, Olympia, Washington | $70,600 |
| July 13-20, 2024 | Washington State Employees Credit Union, Olympia Farmer's Market, 700 Capitol Way N., Olympia, Washington | $206,400 |
| August 8, 2024 | Island Federal Credit Union, Melville Library, 100 Nicolls Road, Stony Brook, New York | $19,200 |
| August 8, 2024 | Island Federal Credit Union, Student Activities Center, 100 Nicolls Road, Stony Brook, New York | $19,180 |
| August 8, 2024 | Island Federal Credit Union, Student Union, 100 Nicolls Road, Stony Brook, New York | $20,800 |
| September 4-7, 2024 | First Bank, Thomasville, 201 Kennedy Road, Thomasville, North Carolina | $194,320 |
| September 21, 2024 | Pinnacle Bank, 2312 Bridgeport Drive, Raleigh, North Carolina | $53,020 |
| October 5, 2024 | West Gate Bank, 6003 Old Cheney Road, Lincoln, Nebraska | $141,164 (attempted) |
| October 5, 2024 | Cornhusker Bank, 5701 S. 34th Street, Lincoln, Nebraska | Unknown (attempted) |
| October 6, 2024 | Arbor Bank, 911 Central Avenue, Nebraska City, Nebraska | $19,000 |
| October 6, 2024 | Arbor Bank, 16949 Lakeside Hills Plaza, Omaha, Nebraska | Unknown (attempted) |
| October 6, 2024 | Arbor Bank, 18294 Evans Street, Elkhorn, Nebraska | Unknown (attempted) |
| October 26, 2024 | West Gate Bank, 1204 West O Street, Lincoln, Nebraska | $199,466 (attempted) |

5. In addition, as a result of jackpotting attacks occurring between on or about July 19 and 26, 2024, in the state of Washington as outlined above, Washington State Employees Credit Union incurred costs from removing remaining cash from all ATMs, including armored transport and other security measures, totaling $661,050.

6. In several instances, Defendant is depicted in bank surveillance footage from the above ATM jackpotting incidents. Additionally, Defendant's fingerprint was found at the scene of one ATM jackpotting incident.

7. The ATM jackpotting attacks against West Gate Bank, Cornhusker Bank, and Arbor Bank occurred in the District of Nebraska.

### III

### PENALTIES

A.   Defendant understands that the crime to which Defendant is pleading guilty carries the following penalties:

COUNT I.

1. A maximum 5 years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count;
4. A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison all or part of the term of supervised release
5. Possible ineligibility for certain Federal benefits.

COUNT II.

1. A maximum 10 years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count;
4. A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison all or part of the term of supervised release; and
5. Possible ineligibility for certain Federal benefits.

### IV

### AGREEMENT LIMITED TO PARTIES

A.   This plea agreement is limited to the United States Attorney's Office for the District of Nebraska and the Department of Justice's Computer Crime and Intellectual Property Section, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V

### SENTENCING ISSUES

A.  SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. The parties agree that the base offense level is 6 pursuant to U.S.S.G. § 2B1.1(a).

2. The parties agree that the loss exceeds $3,500,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(J).

3. The parties agree that the offenses involved 10 or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A).

4. The parties agree that Defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; a substantial part of a fraudulent scheme was committed from outside the United States; or the offense otherwise involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means; pursuant to U.S.S.G. § 2B1.1(b)(10).

5. The parties agree that Defendant was convicted of an offense under 18 U.S.C. § 1030(a)(5)(A); pursuant to U.S.S.G. § 2B1.1(b)(19)(A)(ii).

6. If Defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce Defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

7. No agreement has been reached as to whether the Defendant meets all the requirements of U.S.S.G. § 4C1.1(A) for purposes of an adjustment for certain zero-point offenders.

8. Restitution. Defendant agrees to the following regarding Restitution:

    a.  The amount of restitution ordered by the Court shall include all relevant conduct,

including, but not limited to, all charged and uncharged criminal conduct alleged in the Information and not limited to the count(s) of conviction.

b. Defendant shall pay restitution in an amount determined at sentencing.

c. Defendant also shall pay the Special Assessment of $200.00 [$100 per count of conviction] by submitting a satisfactory form of payment to the Clerk of the Court *prior to* appearing for the sentencing proceeding in this case.

d. Court imposed monetary penalties are ***due immediately*** and subject to ***immediate*** enforcement by the United States. 18 U.S.C. § 3613.

e. Any Court ordered schedule for restitution payments is merely a ***minimum*** payment obligation and does not limit the methods by which the United States may immediately enforce the judgment in full, including but not limited to enrollment in the Treasury Offset Program (TOP) (*see* 26 U.S.C. § 6402(d); 31 U.S.C. §3720A; 31 U.S.C. § 3716) and garnishment of available funds, wages, or assets (*see* 18 U.S.C. §§3613, 3664(m)).

f. If incarcerated, Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a payment schedule.

g. Defendant will provide all of Defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam. Defendant will fully and truthfully disclose all assets and property in which Defendant has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

h. At the request of the U.S. Attorney's Office (USAO), Financial Litigation Program (FLP), Defendant will promptly execute and return a fully completed and executed Financial Disclosure statement under oath, a Tax Information Authorization Form 8821, and a Request for Transcript of Tax Return Form 4506-T. Defendant also agrees to provide the USAO FLP copies of financial information that Defendant submitted to the U.S. Probation Office.

i. Defendant authorizes the USAO FLP to obtain Credit Reports concerning Defendant to enable the USAO to evaluate Defendant's ability to satisfy any financial obligations and monetary penalties imposed as part of the sentence and will execute any Release for such information upon request.

j. Defendant understands that compliance with USAO requests for financial

information will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility at sentencing. Defendant's failure to timely and accurately complete and sign the financial statement and any update thereto, may, in addition to any other penalty or remedy, indicate a failure to accept responsibility.

     k.  Defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until Defendant has satisfied restitution in full.

     l.  Defendant certifies that Defendant has not transferred assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Defendant promises that Defendant will make no such transfers in the future.

     m.  If the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which Defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of Defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, enforce the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, including enforcement of 100 percent of the value of any previously undisclosed asset. Defendant agrees not to contest enforcement against of such asset or property. If the United States opts to be relieved of its obligations under this plea agreement, Defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

B.     <u>ACCEPTANCE OF RESPONSIBILITY</u>.

Notwithstanding paragraph A above, the United States will <u>not</u> recommend any adjustment for Acceptance of Responsibility if Defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or

6. Refuses to abide by any lawful court order, or

7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

**The parties further agree Defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that Defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that Defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence Defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.**

C.    ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that Defendant may not request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D.    CRIMINAL HISTORY.

The parties have no agreement concerning Defendant's Criminal History Category, except that if Defendant is determined to be a Career Offender, the parties agree that Defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

E.    "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report and may be disclosed to the court for purposes of sentencing.

F.    IMMIGRATION CONSEQUENCES.

Defendant is aware of and acknowledges that his plea pursuant to this plea agreement may have immigration consequences up to and including possible deportation.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

A.      Defendant hereby knowingly and expressly waives any and all rights to appeal Defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which Defendant could assert to the charges or to the Court's entry of Judgment against Defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

1. A claim of ineffective assistance of counsel; and

2. A right to file a motion under Section 3582(c)(1)(A), including the general right to file a compassionate release motion; the right to file a second or successive such motion; or the right to appeal the denial of a compassionate release.

B.      Defendant further knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

1. The right to timely challenge Defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which Defendant is agreeing to plead guilty fails to state a crime; and

2. The right to seek post-conviction relief based on ineffective assistance of counsel.

C.      If Defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by Defendant pursuant to this plea agreement in any such prosecution.

## VII

## BREACH OF AGREEMENT

A.      Should it be concluded by the United States that Defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, Defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement

otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by Defendant.

B.       In the event Defendant commits a crime or otherwise violates any term or condition of this plea agreement, Defendant shall not, because of such violation of this agreement, be allowed to withdraw Defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
## <u>SCOPE OF AGREEMENT</u>

A.       This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B.       By signing this agreement, Defendant agrees that the time between the date Defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. Defendant stipulates that such period of delay is necessary in order for Defendant to have an opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of Defendant and the public in a speedy trial.

C.       The United States may use against Defendant any disclosure(s) Defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit Defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D.       Pursuant to 18 U.S.C. § 3013, Defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which Defendant pleads guilty. Defendant will make this payment at or before the time of sentencing.

E.       By signing this agreement, Defendant waives the right to withdraw Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). Defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, Defendant understands that if the court rejects the plea agreement, whether or not Defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and Defendant shall be subject to prosecution for any

federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F.    This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

A.    No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

A.    By signing this agreement, Defendant certifies that Defendant read it (or that it has been read to Defendant in Defendant's native language).  Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
LESLEY A. WOODS
United States Attorney

2·2·26
Date

DANIEL PACKARD
ASSISTANT U.S. ATTORNEY

2·2·26
Date

_for_ FRANK LIN
SENIOR COUNSEL, CCIPS

1-23-26
Date

ODDRY ARNOLDO CABRERA TORREALBA,
a/k/a LUIS ALEJANDRO BERDUGO BARRAZA
DEFENDANT

1-23-26
Date

KEITH DORNAN
COUNSEL FOR DEFENDANT

12

2·2·2026
Date

MARISSEL DESCALZO
COUNSEL FOR DEFENDANT